THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOMBARDI'S CUCINA, INC., a
Washington corporation,

         Plaintiff,

    v.

HARLEYSVILLE INSURANCE
COMPANY, a Pennsylvania corporation,

         Defendant.

Case No. C09-1620-JCC

ORDER

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 18), Defendant's Response (Dkt. No. 26), and Plaintiff's Reply (Dkt. No. 36); Defendant's Motion for Summary Judgment (Dkt. No. 24), Plaintiff's Response (Dkt. No. 51), and Defendant's Reply (Dkt. No. 53); Defendant's Motion to Continue (Dkt. No. 27), Plaintiff's Response (Dkt. No. 32), and Defendant's Reply (Dkt. No. 37); and Plaintiff's Motion for Protective Order (Dkt. No. 39), Defendant's Response (Dkt. No. 45), and Plaintiff's Reply (Dkt. No. 47). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART Plaintiff's Motion for Partial Summary Judgment, GRANTS IN PART Defendant's Motion for Summary

ORDER
PAGE - 1

1    Judgment, and STRIKES AS MOOT Defendant's Motion to Continue and Plaintiff's Motion

2    for Protective Order for the reasons explained herein.

3    **I.    BACKGROUND**

4         Flood insurance in the United States is provided through the National Flood Insurance

5    Program (NFIP), a federal program administered by the Federal Emergency Management

6    Agency (FEMA). In order to better administer the NFIP, FEMA authorizes private insurance

7    companies—called Write-Your-Own (WYO) Carriers—to offer flood insurance policies under

8    their own logos to the public. Although these policies are issued by private companies, the

9    insurance contract itself—called a Standard Flood Insurance Policy (SFIP)—is written by

10   FEMA; furthermore, the funds with which WYO carriers administer their policies are located

11   in the U.S. Treasury. *Flick v. Liberty Mutual*, 205 F.3d 386, 389–93 (9th Cir. 2000).

12        Defendant sells flood insurance policies as a WYO carrier. (Mot. 2 (Dkt. No. 24).)

13   Plaintiff, which operates an Italian restaurant, purchased flood insurance from Defendant for

14   the property in which the restaurant is located for the period from November 13, 2008, to

15   November 13, 2009. (First Am. and Supplemented Comp. ¶ 4.1 (Dkt. No. 23 at 2).) Plaintiff's

16   insurance was of two types: Building Property and Personal Property. (Mot. 4 (Dkt. No. 18).)

17   Generally speaking, Building Property coverage insures the building itself and any additions

18   that have become a part of the building, while Personal Property coverage insures the contents

19   of a building. (SFIP General Property Form III (Dkt. No. 15-2 at 50–52).) Plaintiff's landlord,

20   KIN Issaquah Partnership (KIN), also held an SFIP on that property for Building Property

21   coverage alone. (Mot. 2 (Dkt. No. 24).)

22        On or around January 7, 2009, the property leased by Plaintiff suffered damage due to a

23   flood. (First Am. and Supplemented Comp. ¶ 4.17 (Dkt. No. 23 at 4); Mot. 5 (Dkt. No. 18).)

24   From then through July 2009, Plaintiff and Defendant underwent the process of filing,

25   adjusting, and paying the claims that arose out of the flood damage. Defendant paid three

26   claims filed under Plaintiff's Personal Property coverage. Defendant refused, however, to pay

ORDER
PAGE - 2

1    the claims Plaintiff filed under Building Property coverage seeking payment for damage

2    suffered during the flood by leasehold improvements on Plaintiff's property. Payment on such

3    claims was impermissible, Defendant argued, because a claim filed by KIN had already been

4    paid and because multiple insurance policies on a single piece of property are prohibited by the

5    terms of the SFIP. Plaintiff appealed that denial to FEMA, which, on August 11, 2009,

6    responded to Plaintiff with a letter concurring with Harleysville's decision to deny the Building

7    Property claims. Subsequently, on November 12, 2009, Plaintiff filed suit in this court to

8    challenge Defendant's denial of the Building Property coverage. (Mot. 2–5 (Dkt. No. 24).)

9         In addition, by November 2009 Plaintiff sought to file a further Personal Property claim

10   in addition to the three already paid by Defendant. (Resp. 4 (Dkt. No. 51).) Therefore, on

11   November 25, 2009, about two weeks after Plaintiff's complaint was filed, Plaintiff requested

12   that Defendant waive the requirement in the SFIP that an insured file a proof of loss within

13   sixty days of the flood damage. (*Id.* at 5.) Defendant failed to respond to the request. (*Id.* at 6.)

14   Consequently, Plaintiff filed an amended and supplemented complaint that further alleged

15   Defendant had breached the parties' insurance contract by failing to pay a claim under

16   Plaintiff's Personal Property coverage. (Dkt. No. 23.)

17        Plaintiff's instant motion for summary judgment concerns only the issues relating to

18   Building Property coverage. Plaintiff seeks a declaration that its leasehold improvements are

19   covered by the Building Property coverage of the SFIP and that payment on Building Property

20   claims it has filed is not prohibited by either the clause of the SFIP prohibiting multiple

21   policies or federal statutes limiting the total amount of flood insurance that may be issued on a

22   single structure. Furthermore, Plaintiff requests that the Court order Defendant to pay

23   Plaintiff's Building Property claim of $63,800. (Mot. 1 (Dkt. No. 18).) Defendant, in turn,

24   seeks a continuance on Plaintiff's motion for summary judgment, arguing that the record

25   currently before the Court is insufficient to decide the motion. (Mot. 1 (Dkt. No. 27).)

26   Alternatively, Defendant argues that if the record is sufficient Plaintiff is entitled to neither

ORDER
PAGE - 3

1  declaratory relief nor damages because Plaintiff failed to submit a timely proof of loss prior to

2  filing suit. (Mot. 1 (Dkt. No. 24).)

3          Defendant's motion for summary judgment concerns Plaintiff's Personal Property

4  claim. Defendant argues that because Plaintiff failed to timely file a proof of loss, Defendant

5  had no obligations to make further payments under the contract. (Mot. 7 (Dkt. No. 24).)

6  Plaintiff protests that its request for a waiver of the deadline to file a proof of loss was ignored,

7  with no explanation ever provided, while Defendant insists that it lacks authority to grant or

8  deny such requests. (*Id.* at 7–8).)

9  **II.      STANDARD OF REVIEW**

10          Federal Rule of Civil Procedure 56(c) mandates that a motion for summary judgment

11  be granted when "the pleadings, the discovery and disclosure materials on file, and any

12  affidavits show that there is no genuine issue as to any material fact and that the movant is

13  entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There exists a genuine issue as

14  to a particular fact—and hence that fact "can be resolved only by a finder of fact" at trial—

15  when "[it] may reasonably be resolved in favor of either party"; conversely, there exists no

16  genuine issue when reasonable minds could not differ as to the import of the evidence.

17  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). Whether a particular fact is

18  material, in turn, is determined by the substantive law of the case: "Only disputes over facts

19  that might affect the outcome of the suit under the governing law will properly preclude the

20  entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

21  counted." *Id.* at 248. Summary judgment, then, demands an inquiry into "whether the evidence

22  presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

23  that one party must prevail as a matter of law": if applying the relevant law to those facts about

24  which no two reasonable factfinders could disagree dictates that the moving party must prevail,

25  then a motion for summary judgment must be granted. *Id.* at 250–52.

26

ORDER
PAGE - 4

III.     **DISCUSSION**

A.     **Plaintiff's Business Property Coverage**

    **1.  Improvements**

    Plaintiff requests this Court to issue a declaration that a tenant's leasehold improvements are covered under the SFIP's Building Property Coverage. The SFIP defines "Improvements" as "Fixtures, alterations, installations, or additions comprising a part of the insured building." (SFIP General Property Form II.B.17 (Dkt. No. 15-2 at 49).) Article III.A, found under the "Coverage A-Building Property" section, provides, "We insure against direct physical loss by or from flood to: 1. The building described on the Declarations Page at the described location." (SFIP General Property Form III.A (Dkt. No. 15-2 at 50).) If improvements are part of the building, and if the building is covered under Building Property coverage, then it follows that improvements are covered under Building Property coverage. It appears that Defendant does not challenge this conclusion. (Dft's Resp. 1 (Dkt. No. 26).) Furthermore, Defendant explicitly concedes that tenants may possess an insurable interest in leasehold improvements and seems not to dispute that tenants may purchase Building Property coverage as long as their landlords do not hold a duplicate policy. (*Id.* at 1, 8–9.) Hence, the Court holds that, at least in general, the Building Property coverage of an SFIP covers tenants' leasehold improvements.

    **2.  Multiple Policies**

    Article VII.U.1 of the SFIP provides that FEMA "will not insure your property under more than one NFIP policy." (SFIP General Property Form VII.U.1 (Dkt. No. 15-2 at 63).) Defendant contends that this provision prohibits different individuals from each holding flood insurance policies on a single piece of real estate; Plaintiff, by contrast, contends it merely prohibits a single entity from holding multiple policies on the same property interest. (Mot. 16 (Dkt. No. 18); Resp. 8 (Dkt. No. 26).) These two interpretations clearly turn on the ambiguity in the term "property." Because it is reasonable to read "property" to refer either to a piece of

1    real estate or to a property interest, the Court turns to the context of the sentence in order to

2    determine which reading is more plausible.

3        Article VII.U continues by describing the procedures that arise when duplicate policies

4    do exist on a single property. If the duplication was unknowingly created, the contract

5    explains, the insured—referred to as "you"—may choose which policy to keep and may elect

6    to increase the coverage limit on that policy to match the highest limit amongst the multiple

7    policies held. (SFIP General Property Form VII.U.1 (Dkt. No. 15-2 at 63).) Were the clause

8    designed for a situation where different entities held policies on the same piece of real estate,

9    this method for ending the duplication would be nonsensical. Each insured's SFIP would create

10   both the ability to cancel the policies of the other insureds and the incentive to do so. Further,

11   the contract provides no guidance for how this mess might be resolved. Interpreting the

12   contract to lead to such a result would be absurd. The Court interprets contracts to avoid absurd

13   results. *See E-Z Loader Boat Trailers v. Travelers Indem. Co.*, 726 P.2d 439, 443 (Wash.

14   1986). Hence, Defendant's interpretation of VII.U as concerning multiple policyholders cannot

15   stand; rather, VII.U must be read to address multiple policies held by the same individual on a

16   single property interest. *Studio Frames, Ltd. v. Std. Fire Ins. Co.*, 483 F.3d 239, 248 (4th Cir.

17   2007). VII.U does not prohibit Plaintiff and KIN from simultaneously holding policies on the

18   restaurant property to cover, respectively, the property itself and any leasehold improvements;

19   therefore, Defendant may not rely on VII.U to deny Plaintiff's insurance claims under Building

20   Property Coverage.

21       Defendant also claims that Article III.B.7 of the SFIP supports its preferred

22   interpretation of VII.U. Article III.B.7 provides, "If you are a tenant, you may apply up to 10

23   percent of the Coverage B limit to improvements: a. Made a part of the building you occupy;

24   and b. You acquired or made at your expense, even though you cannot legally remove them."

25   (Standard Flood Insurance Policy General Property Form III.B.7 (Dkt. No. 15-2 at 52).)

26   According to Defendant, by permitting tenants to apply part of their Personal Property

ORDER
PAGE - 6

coverage to leasehold improvements the contract indicates that FEMA did not intend tenants to be able to purchase Building Property coverage for their leasehold improvements when the tenants' landlord held Building Property coverage on the property. This provision of the contract does no such thing. Rather, it merely indicates that FEMA intended tenants' improvements to be partially covered by Personal Property coverage. It is of course possible that FEMA might have so intended because it wished tenants to be prohibited from purchasing Building Property coverage under certain circumstances, but that purpose is certainly not explicit in the text of III.B.7, and FEMA might instead have had one of innumerably many other purposes for including that provision. If it wished to do so, FEMA had a very simple method of prohibiting tenants from purchasing Building Property coverage when their landlords had already done so: putting a provision in the contract. FEMA failed to do so, and this Court declines Defendant's invitation to read such a limitation into the contract when it simply is not there.

### 3. Cap on Total Coverage

Further, Defendant argues that it is prohibited by statute from paying all of Plaintiff's claims in this case. In relevant part, 42 U.S.C. § 4013(b)(4) provides:

> [I]n the case of any nonresidential property . . . for which the risk premium rate is determined in accordance with the provisions of section 4014 (a)(1) of this title, additional flood insurance in excess of the limits specified in subparagraphs (B) and (C) of paragraph (1) shall be made available to every insured upon renewal and every applicant for insurance, in respect to any single structure, up to a total amount . . . of $500,000 for each structure and $500,000 for any contents related to each structure[.]

42 U.S.C.A. § 4013(b)(4) (2010). Plaintiff argues that this provision limits how much flood insurance a single entity may place on a single structure; Defendant argues it should be read to limit the total amount of flood insurance that may be placed on a single structure. (Pl. Mot. 18 (Dkt. No. 18); Def. Resp. 12–13 (Dkt. No. 26).) Plaintiff is correct. *Studio Frames, Ltd.*, 483 F.3d at 250-252. The statute provides that the insurance therein described—the

ORDER
PAGE - 7

"[A]dditional flood insurance in excess of the limits specified in subparagraphs (B) and (C) of paragraph (1) . . . in respect to any single structure, up to a total amount . . . of $500,000 for each structure . . . ."—will be made available "to every insured upon renewal and every applicant for insurance." Plaintiff is an insured. Hence, the statute authorizes Plaintiff to purchase flood insurance up to a total of $500,000 on any single structure. Congress knows how to limit the total amount of insurance on a single structure: 42 U.S.C. § 4013(b)(1), for example, provides that

> [A]ny flood insurance coverage based on chargeable premium rates under section 4015 of this title which are less than the estimated premium rates under section 4014(a)(1) of this title shall not exceed . . . (B) in the case of business properties which are owned or leased and operated by small business concerns, an aggregate liability with respect to any single structure, including any contents thereof related to premises of small business occupants (as that term is defined by the Director), which shall be equal to (i) $100,000 plus (ii) $100,000 multiplied by the number of such occupants and shall be allocated among such occupants (or among the occupant or occupants and the owner) under regulations prescribed by the Director; except that the aggregate liability for the structure itself may in no case exceed $100,000 . . . .

42 U.S.C.A. § 4013(b)(1). Congress chose to place "to every insured upon renewal and every applicant for insurance" in § 4013(b)(4). This Court will not read it out of the statute.

**4.  FEMA**

Defendant notes in its briefing that FEMA, the agency responsible for administering the NFIP, concurs with Defendant's interpretation of the SFIP. As recounted above, the NFIP Director of Claims, James A. Sadler, rejected Plaintiff's appeal of Defendant's denial of Business Property coverage in a letter dated August 11, 2010, that explicitly endorsed Defendant's interpretations of the SFIP. (Dkt. No. 15-2 at 141–42.) Furthermore, in support of its no-duplicate-policies argument Defendant cites Section F of the General Rules found in the FEMA NFIP Flood Insurance Manual, which provides in relevant part, "Duplicate coverage is not permitted under the NFIP, so only one policy can be issued for building coverage . . . . The policy may be issued either in the name of the building owner or in the names of the building

ORDER
PAGE - 8

owner and tenant." (Def. Resp. 10 (Dkt. No. 26).) Neither of these two administrative

productions, however, are entitled to *Chevron* deference: "Interpretations such as those in

opinion letters—like interpretations contained in policy statements, agency manuals, and

enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style

deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citations omitted).

Rather, "interpretations contained in formats such as opinion letters are 'entitled to respect,'

but only to the extent that those interpretations have the 'power to persuade.' *Id.* (citations

omitted). As explained above, the interpretations of the SFIP provided by FEMA lack that

power. Therefore, the Court departs from FEMA's recommendations.

### 5. *Studio Frames*

In so holding, this Court concurs in the reasoning of a recent decision of the Fourth

Circuit on nearly identical facts, *Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d

239 (4th Cir. 2007). Studio Frames, like the instant case, concerned a tenant—Studio Frames—

that had purchased Building Property coverage from a WYO carrier—Standard Fire—for

leasehold improvements and whose landlord had also purchased Building Property coverage

under a different SFIP for the building itself. 483 F.3d at 241–42. After the property was

flooded, Standard Fire denied Studio Frames' Building Property claims, arguing that tenants

could not acquire Building Property coverage for leasehold improvements, that the SFIP

prohibited tenants from holding Building Property coverage on a piece of real estate where the

landlord also held such coverage, and that total amount of insurance permitted on a single

structure was capped by statute at $500,000. In its ruling, the Fourth Circuit relied on

considerations similar to those laid forth above in rejecting Standard Fire's arguments and

ordering Standard Fire to pay the claims filed by Studio Frames. *Id.* at 244–250. That both this

Court and the Fourth Circuit have reached the same conclusion on this issue helps accomplish

the valuable aim of promoting nationwide consistency in the interpretation of a Federal

contract employed across the country. In addition, as the *Studio Frames* court noted, the

ORDER
PAGE - 9

1  interpretation of the SFIP reached in both cases is rendered further compelling by its

2  consistency with the broader aims of the NFIP. *Id.*

3         **6. Proof of Loss**

4         Plaintiff concedes that it did not file a timely proof of loss on its Building Property

5  claim before filing this suit and that the terms of the SFIP require the filing of such a proof of

6  loss. (Pl. Reply 2 (Dkt. No. 36).) Defendant, therefore, argues that the instant suit must be

7  dismissed. (Def. Mot. 1 (Dkt. No. 24).) Plaintiff, however, replies that it was excused from that

8  requirement because Defendant had repudiated the contract by denying the Building Coverage

9  claim. (Pl. Reply 2 (Dkt. No. 36).) Defendant does not dispute that repudiation of an SFIP may

10  excuse the requirement that an insured file a proof of loss, but denies that it repudiated the

11  contract in this case. (Def. Reply 1–2 (Dkt. No. 53).)

12         "Language that under a fair reading 'amounts to a statement of intention not to perform

13  except on conditions which go beyond the contract' constitutes a repudiation." RESTATEMENT

14  (SECOND) OF CONTRACTS § 250 cmt. b (1981) (citing comment 2 to Uniform Commercial

15  Code § 2-610). Defendant concedes that it informed Plaintiff it would not pay Plaintiff's

16  Building Property coverage claims because both Plaintiff and Plaintiff's landlord held Building

17  Property coverage on the same piece of real estate. (Def. Reply 8 (Dkt. No. 53).) As a

18  condition of performance, then, Defendant demanded that Plaintiff's landlord not hold

19  Building Property coverage on the property at issue. This condition is not imposed by the

20  SFIP. Defendant, therefore, did state its "intention not to perform except on conditions which

21  go beyond the contract" and thereby repudiated the Building Property coverage under the

22  SFIP. Hence, Plaintiff was excused from the requirement of filing a proof of loss.

23  RESTATEMENT (SECOND) OF CONTRACTS § 255.

24         In response, Defendant argues that the denial of an insurance claim does not constitute

25  repudiation of a contract. (Def. Reply 6–7 (Dkt. No. 53).) That argument, however, is

26  irrelevant. Defendant did not merely deny a claim; rather, it refused to perform except on a

ORDER
PAGE - 10

1    condition not found in the contract. The precedent Defendant cites to show that denying a

2    claim is not repudiation, therefore, does not challenge this Court's present holding.

3         **7.  Damages**

4         Finally, Plaintiff requests that this Court order Defendant to pay a Building Property

5    claim of $63,800. The Court believes, however, that such action would be premature. There is

6    no reason to believe that, the parties' obligations under the SFIP having been clarified, the

7    standard process of insurance adjustment is inadequate for Plaintiff to secure payment. Since

8    the Court lacks competence in insurance adjustment, it would constitute overreach to interfere

9    in that process in the absence of a dispute requiring judicial intervention. Consequently, the

10   Court denies Plaintiff's request that Defendant be ordered to pay the claim.

11        **B.    Plaintiff's Personal Property Coverage**

12        **1.  Waiver**

13        Plaintiff concedes that it failed to timely submit a proof of loss for $2,252.42 under the

14   10 Percent Improvements Coverage clause of the Building Property policy, and $44.980.01 in

15   additional Personal Property Coverage. (Resp. 5 (Dkt. No. 51).) Here, repudiation is not an

16   issue, but Plaintiff argues that this failure is excusable because it submitted to Defendant a

17   request for a waiver of the 60-day filing deadline. (*Id.* at 5–6; Carr Decl. Ex. G (Dkt. No. 51).)

18   Neither Defendant nor FEMA ever responded to the request for a waiver. (Resp. 6 (Dkt. No.

19   51).) By declining to answer instead of deciding the request on the merits, Plaintiff claims,

20   Defendant and FEMA abused their discretion. (*Id.* at 6–7.) By failing to pay the claim, Plaintiff

21   claims, Defendant breached the insurance contract. (Dkt. No. 23.) Plaintiff's arguments are

22   mistaken.

23        The Ninth Circuit has held that an insured may not avoid strict enforcement of the 60-

24   day proof of loss requirement, except through a valid waiver from the Federal Insurance

25   Administrator. *Flick*, 205 F.3d 386 at 391; 44 CFR 61.13(d). As Defendant points out, it has no

26   authority to grant or deny a waiver of the proof of loss requirement. (Reply 9 (Dkt. No. 53).)

ORDER
PAGE - 11

1    Plaintiff's sole authority for the proposition that this Court can review the denial of a waiver

2    request is *Moffett v. Computer Sciences Corp.*, 647 F. Supp. 2d 517 (D. Md. 2009). In that

3    case, however, FEMA itself was a Defendant—not merely the WYO carrier—and it was

4    FEMA's actions that the court determined could be reviewed. Neither statute, regulation, nor

5    case law provides support for a breach of contract claim against an insurer for failing to

6    respond to a waiver request. It is troublesome that FEMA might choose to avoid review of its

7    waiver determinations by failing to respond to requests, but this is an issue that Plaintiff should

8    have pursued with FEMA. Accordingly, Defendant's motion is GRANTED IN PART.

9    **IV.    CONCLUSION**

10         For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 18) is

11   GRANTED IN PART and Defendant's Motion for Summary Judgment (Dkt. No. 24) is

12   GRANTED IN PART. Consequently, the Court STRIKES AS MOOT Defendant's Motion to

13   Continue (Dkt. No. 27) and Plaintiff's Motion for Protective Order (Dkt. No. 39).

14

15         DATED this 17th day of August, 2010.

16

17

18   _____

19   John C. Coughenour
     UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

ORDER
PAGE - 12